# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **BILLY JAMES DEAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **1:14-cv-01691-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION**, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Billy James Dean brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

## I. Procedural History

Dean filed an application for Title II disability insurance benefits on March

9, 2011, (R. 134–35), alleging a disability onset date of May 15, 2005, (R. 134), due to degenerative joint disease in both shoulders, a neck condition, L-4–L-5 spondylosis, bone spurs in both heels, bilateral hearing loss, bilateral tinnitus, sinusitis, sleep apnea, hypertension, residuals of an anal tear, diabetic neuropathy, hyperlipidemia, residual scars with fever from smallpox, major depressive disorder with anxiety, diabetes mellitus type II, carpal tunnel syndrome in both hands, and chronic headaches, (R. 201). Dean was forty-three years old on his alleged onset date and forty-nine years old on his date last insured, (R. 56), had a high-school education, (R. 24), and had past light work as a janitor, medium work as a cook, heavy work as a material handler, and medium work as a truck driver, (R. 51). After the SSA denied his application, both initially on April 21, 2011, (R. 67), and upon reconsideration on July 14, 2011, (R. 77), Dean requested a hearing, (R. 101–05). Dean did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured, (R. 14).

The ALJ denied Dean's claim on January 7, 2013, (R. 9–30), which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 3, 2014, (R. 1–5). Dean then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

>   (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

As a preliminary matter, the ALJ determined that Dean last met the insured status requirements of the Act on June 30, 2011, (R. 14). Then, in performing the Five Step sequential analysis, the ALJ initially determined that Dean had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured and therefore met Step One, (R. 14). Next, the ALJ acknowledged that Dean's severe impairments of lumbar degenerative disc disease, bone spurs, in both heels, diabetes, carpal tunnel syndrome, and obesity met Step Two. *Id*. However, the ALJ concluded that Dean's bilateral shoulder problems, cervical degenerative disc disease, bilateral hearing loss and tinnitus,

diminished sight, sleep apnea, residuals of small pox, migraine headaches, anxiety, depression, and anger management issues were non-severe impairments, (R. 18). The ALJ then proceeded to the next step and found that, through the date last insured, Dean did not satisfy Step Three since he "did not have an impairment or combination of impairments that met or medically equals one of the listed impairments," (R. 19). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that:

> through the date last insured, [Dean] had the residual functional capacity . . . to perform sedentary work, as defined in 20 CFR404.1567(a) that requires no more than occasional climbing ladders, ropes, or scaffolds; no more than frequent balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs; and no more than frequent handling or fingering with the right wrist. From a mental standpoint,[Dean] is precluded from public contact or more than occasional contact with co-workers and supervisors, and can adapt to infrequent workplace changes that are gradually introduced.

(R. 19). The ALJ then noted that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that [Dean] is 'not disabled,' whether or not the claimant has transferable job skills," (R. 24) (citing S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). Lastly, in Step Five, the ALJ considered Dean's age, education, work experience, and residual functional capacity ("RFC"), and

determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, sections 201.28 and 201.21 and on the testimony of a vocational expert, that "there were jobs that existed in significant numbers in the national economy that [Dean] could have performed." *Id*. Because the ALJ answered Step Five in the negative, he determined that Dean was not disabled between the alleged onset date and the date last insured (R. 25).

### V. Analysis

The court turns now to Dean's contentions that the ALJ erred (1) in his assessment of Dean's mental impairments, doc. 9 at 4–8, and (2) by failing to consider whether he should have assessed Dean as a person approaching advanced age, *id*. at 8–12. For the reasons stated below, the court finds that the ALJ applied the correct legal standard and his opinion is supported by substantial evidence.

*A.     Dean's mental impairments*

As an initial matter, the court notes that Dean's primary contention regarding the ALJ's assessment of his mental impairments is that the ALJ erred by concluding that Dean's depression was a non-severe impairment. *Id*. at 4. This argument is a nonstarter. "Even if the ALJ erred in not indicating whether [Dean's depression] was a severe impairment, the error was harmless because the ALJ concluded that [Dean] had *a* severe impairment[,] and that finding is all that step

two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (emphasis added); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis added) ("the finding of *any* severe impairment" is enough to satisfy step two). As the court previously stated, the ALJ found that Dean's lumbar degenerative disc disease, bone spurs, in both heels, diabetes, carpal tunnel syndrome, and obesity were severe impairments that met Step Two. Consequently, the ALJ did not err by concluding that Dean's depression was a non-severe impairment.

More generally, Dean seems to contend that the ALJ erred by failing to conclude that his mental health impairments have rendered him unable to work. This argument fails, however, because substantial evidence supports the ALJ's conclusion that Dean's mental impairments were non-severe. First, although Dean points to a handful of medical records that he claims support his contentions regarding the severity of his mental impairments, *see* doc. 9 at 6–7, he fails to account for the voluminous treatment records[1] indicating that he responded well to

---

[1] The court notes, as did the ALJ, that Dean underwent brief psychiatric hospitalization in December 2010, (R. 16) (citing (R. 536–44)). However, again, as the ALJ noted, the hospitalization was "pursuant to an unfortunate confluence of transient psychological stressors that included his wife's request for divorce, his son's incarceration for child molestation, and his mother-in-law's further incapacitation by stroke." *Id*. Dean responded well to conservative treatment, *id.*, the facility discharged him four days after his intake, *id*, and the following month he reported his depression had improved and displayed appropriate mood and affect, (R. 603).

"conservative treatment with commonly prescribed psychotropic agents," (R. 16).

In particular, the ALJ noted that Dean's

> mental status exams are routinely unremarkable for clinical signs consistent with [Dean's] dire allegations, as attending medical personnel routinely document his "alert, cooperative and pleasant" demeanor; "talkative" interaction; "clean and neat appearance"; "appropriate" mood; congruent affect; "good fund of knowledge"; effective memory and recall; "good" eye contact; full orientation; sound judgment and insight; "average" intelligence; "spontaneous and coherent speech"; and lack of hallucinations, delusions, obsessions, compulsions, paranoia, flashbacks, or suicidal/homicidal ideations.

*Id*. (quoting (R. 320, 346–47, 352, 354, 382, 396, 405, 478, 497, 541, 563, 586, 603, 732, 806, 824, 1194, 1227, 1313, 1429, 1444, 1458, 1477, 1493, 1501)). The ALJ also noted that Dean's counseling records frequently reflected "assigned Global Assessment of Functioning Scale . . . scores between 60 and 70[,] commensurate with predominately mild symptomatology and attendant limitations." *Id*. (citing (R. 347, 352, 471–72, 487, 799, 814, 830, 836, 1203)). Critically, as the ALJ noted, treating physician D. Shawn Surrat "reported a lack of 'any limitations in functioning secondary to [Dean's] mental condition.'" *Id*. (quoting (R. 322)). Reiterating its earlier explanation of the standard of review in the present matter, the court must affirm the ALJ's decision if it is supported by

substantial evidence.[2] 42 U.S.C. § 405(g). This is not a stringent standard; substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and, if supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *Martin*, 894 F.2d at 1529. The court finds that the evidence relied on by the ALJ more than qualifies as substantial evidence supporting his conclusion that Dean's mental health impairments are non-severe.

Second, in addition to examining Dean's medical records, the ALJ also assessed the severity of Dean's mental impairments pursuant to the disability regulations for evaluating mental disorders, which are colloquially referred to as the "paragraph B" criteria, (R. 17–19). The SSA has "identified four broad functional areas in which [it] will rate the degree of [a claimant's] functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. 404.1520a(c)(3). It rates "the degree of limitation in the first three functional areas . . . us[ing] the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. 404.1520a(c)(4). "If [the SSA] rate[s] the degree of [a claimant's] limitation in the

---

[2] Application of incorrect legal standards is also grounds for remand, *see Lamb*, 847 F.2d at 701, but Dean does not appear to contend that the ALJ applied incorrect legal standards when evaluating Dean's mental impairments.

first three functional areas as "none" or "mild" and "none" in the fourth area, [it] will generally conclude that [the claimant's] impairment is not severe . . . ." 20 C.F.R. 404.1520a(d)(1).

The ALJ concluded that Dean had "only mild limitations with activities of daily living, social functioning, concentration, persistence, and pace," which, coupled with the lack of any allegations that Dean suffered from periods of decompensation, supported his conclusion that Dean's mental impairments were not severe, (R. 18). In reaching this conclusion, the ALJ relied on evidence derived from a variety of sources. Chiefly, he noted that Dean "described[3] a largely independent married lifestyle . . . populated with an array of conventional daily, social, and cognitive activities that confound more than mild limitations," (R. 17), including:

> helping care for his blind, infirmed mother-in-law, "cooking meals, washing clothes, and doing any house cleaning[,]" assisting with the care of the

---

[3] The ALJ relied on a functional report Dean prepared in connection with a previous unsuccessful disability application, (R. 166–74), rather than the functional report Dean prepared in connection with the disability application at issue here, (R. 213–23), "because there is no correspondent evidence in the objective record to justify either the compromised ability to manage basic personal care and administer medication without assistance or the capacity to finish things started and follow instruction[, n]or is this progressive decline consistent with the claimant's failure to identfy related and worsening symtomatology during a routing and intervening status update in the disability application process," (R. 17–18 (citing R. 239)). The ALJ concluded that "answers in the second Function Report arguably represent less credible allegations made to increase the likelihood of approval following his claim's early denial," (R. 18). Dean does not contend that the ALJ erred in relying on the earlier functional report.

> family's pet dog[,] performing a full range of daily personal care and hygiene . . . as well as taking prescribed medication, getting to appointed places, and doing chores, all without required reminders[,] preparing at least simple meals using common kitchen appliances like a microwave or conventional oven to cook frozen foods[,] getting out of the house . . . "2 or 3 times a day[,]" driving [,] grocery shopping[,] paying bills[,] counting change[,] managing a bank account[,] using a checkbook or money orders[,] watching television "from the time he gets up [until] he goes to bed[,]" playing cards—especially "Rummy"—and reading for diversion[,] getting along with family, friends, neighbors, authority figures and previous co-workers[,] with "no problems[,]" attending church[,] exhibiting "ok"-to-"good" abilities handling stress and changes in routine[,] managing public welfare benefits (i.e. food stamps) without a payee[,] and doing common household duties like "laundry, washing dishes, dusting furniture," and vacuuming.

*Id*. (citing (R. 164, 167–173, 177–182, 554, 630, 801)). The ALJ also noted that Dean's wife "averred that her husband's interpersonal skills and ability to handle money had not been impaired by his alleged illness, injuries, or conditions," *id*. (citing R. 180–81), and that "[d]espite allegedly severe problems with attentiveness and perseverance, [Dean] exhibited no difficulty with the accurate and detailed completion of considerable disability application paperwork, and I observed him to be well acclimated, focused and responsive throughout the hearing, as well as an effective personal and medical historian,"[4] (R. 18). The ALJ

---

[4] "In the Eleventh Circuit, it is not appropriate for the Administrative Law Judge, who is not a medical expert, subjectively to arrive at an index of traits that he expects the claimant to manifest at the hearing, and then to deny the claim when such traits are not observed." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). The ALJ's observation here is not the quintessential impermissible sit and squirm jurisprudence because it is consistent with Dean's wife's testimony and the medical evidence. Moreover, the ALJ did not rely exclusively on his

acknowledged that Dean received treatment for anxiety and Dean's contentions regarding his struggles with anger management, but concluded that the conservative nature of the former and "modest medical history" of the later compelled a finding that Dean's mental impairments produce only mild limitations with social functioning. *Id*. In reaching this conclusion, the ALJ noted that it comparted with a Psychiatric Review Technique ("PRT") analysis performed by agency medical consultant Shelby Gennett, Ph.D, who, like the ALJ, concluded that Dean's mental impairments produce a mild degree of limitation with regard to restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. *Id*; (R. 333).

Dean contends that the ALJ erred in discounting a second PRT analysis performed by George Grubbs, Psy.D., doc. 9 at 5, in which Dr. Grubbs concluded Dean's mental impairments produced a moderate degree of limitation with regard to restriction of activities of daily living, mild difficulties in maintaining concentration, persistence, or pace, and no difficulties in maintaining social functioning, (R. 1026), presumably because Dr. Grubbs' conclusion that Dean's mental impairments produced a moderate degree of limitation with regard to

---

personal observations in denying Dean's claim.

restriction of activities of daily living would preclude a finding that his mental impairments are non-severe pursuant to 20 C.F.R. 404.1520a(d)(1). However, the ALJ discounted Dr. Grubbs' finding because they were contrary to the significant amount of evidence indicating that Dean participates in a wide variety of activities, which the court described above. An ALJ may reject the opinion of even a treating physician, let alone a non-examining consultant like Dr. Grubbs, if the opinion runs contrary to the weight of the evidence. *Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005). Moreover, the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). As such, the ALJ correctly discounted Dr. Grubbs' findings.

In sum, because the ALJ determined that at least one of Dean's other impairments was severe, and because substantial evidence supports his conclusion to the contrary regarding Dean's mental impairments, the ALJ did not err in concluding that Dean's mental impairments were not severe.

B. *Dean's Age Classification*

Dean contends that the ALJ applied an incorrect legal standard by failing to

consider whether he should be classified as a person closely approaching advanced age, i.e. older than fifty, rather than a younger person,[5] because Dean was 101 days short of his fiftieth birthday on his date last insured. Doc. 9 at 11. In support of his position, Dean notes that, per the regulations:

> [The SSA] will not apply the age categories mechanically in a borderline situation. If [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.

20 C.F.R. § 404.1563(b);[6] *see also Garner v. Heckler*, 735 F.2d 1291, 1295 (11th Cir. 1984) (holding that the ALJ erred by mechanically applying the age criteria of the Grids). Unfortunately for Dean, here, the ALJ did not mechanically apply the age criteria of the Grids. While he did use the Grids as a guideline, he also relied

---

[5] When a claimant is less than fifty years old, the SSA generally does not consider whether the claimant's age will seriously affect his ability to adjust to other work, 20. C.F.R. 404.1563(c), but if a claimant is "closely approaching advanced age (age 50–54), [the SSA] will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work," 20. C.F.R. 404.1563(d).

[6] Dean contends that language in the SSA's Program Operations Manual System (POMS), which provides guidance to Administrate Law Judges, dictates that an ALJ commits legal error by failing to consider whether to use an older age category in a borderline situation. Doc. 9 at 8. In light of the absence of much in the way of explanation by Dean, it appears to the court that the language in question is meant to clarify the purpose of a test used to identify borderline situations rather than indicate that consideration of whether to use an older age category in those situations is mandatory, *see* POMS DI 25015.005, but at any rate, "the POMS does not have the force of law." *See Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (citing *Wash. State Dep't of Soc. and Health Servs. v. Keffeler*, 537 U.S. 371, 385 (2003); *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003)).

upon the testimony of the VE. Consequently, he did not err by failing to consider whether Dean should be classified as a person closely approaching advanced age. *See Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635–36 (11th Cir. 2007) (holding that the ALJ did not err by mechanically applying the age criteria of the grids when the ALJ relied upon the testimony of a VE and failed to explicitly consider whether to apply an older age category to the plaintiff).

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Dean is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with the memorandum of decision will be entered.

Done this 16th day of September, 2015.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE